OPINION OF THE COURT
Michael C. Lynch, J.
By decision and order (Lynch, J.) dated January 4, 2012, the court denied defendant’s motion to dismiss the action for lack of standing. Thereafter, at a conference on April 4, 2012, the defendant informed the court that plaintiff, EMC Mortgage Corporation, was the subject of a “Consent Order” between JP Morgan Chase & Co. (JPMC), EMC’s parent company, and the Board of Governors of the Federal Reserve System (see affirmation of Attorney Badalato, exhibit D). Defendant asserted that the consent order undermined plaintiff’s authority to pursue this action. The court informed the parties at the conference that such a contention necessitated a motion.
Now before the court is defendant’s “Supplemental Motion to Dismiss Pending Action of Judgment of Foreclosure and Sale” dated May 29, 2012. By letter order dated June 25, 2012, the court set the return date of July 25, 2012 for the motion. Plaintiff has opposed the application.
The focus of this motion is on the consent order issued April 13, 2011. The court first learned of this consent order at the April 4, 2012 conference when defendant brought the order to the court’s attention. In plaintiffs September 2011 submissions resulting in the court’s January 4, 2012 decision and order, plaintiff failed to disclose the consent order, but nonetheless asserted its standing in this action. From the court’s perspective, as more fully discussed below, plaintiffs failure to disclose the consent order was misleading to both the defendant and the court and disregarded defendant’s right to an independent review required under the consent order.[1]
A review of the consent order discloses several pertinent facts. To begin, JPMC owns numerous nonbank subsidiaries, includ *680 ing EMC Mortgage Corporation (exhibit D). Article 3 of the consent order requires JPMC and EMC to retain an independent consultant “to conduct an independent review of certain residential mortgage loan foreclosure actions . . . regarding individual borrowers with regard to the Servicing Portfolio that was serviced by EMC.” That review must embrace all foreclosure actions pending from January 1, 2009 to December 2010 to essentially address the integrity of the actions. Defendant’s request for an independent review has been confirmed by receipt dated July 23, 2012 (see attachments to reply of Marian Gass, July 30, 2012). That review, importantly, necessitates a determination as to whether the foreclosing party “properly documented the ownership of the promissory note.” Although the consent order was signed as a settlement without an admission by JPMC or EMC of wrongdoing, the underlying allegations included the filing of affidavits by persons without personal knowledge or a proper review of the relevant records.
Here, Ms. Gass challenges EMC’s standing to pursue this action. She maintains that the assignment relied upon by EMC was “robo-signed” by individuals without authority and that EMC never had possession of the original note and mortgage. Significantly, Ms. Gass challenges the integrity of the lost note affidavit submitted by plaintiff in response to the prior motion (exhibit 11). That affidavit dated January 14, 2010 bears the signature of Amy Womack-Hobbs, identified as the “Assistant Secretary” of EMC, and was signed in Louisiana.[2] Defendant argues that EMC is a Texas company and that Ms. WomackHobbs was an employee of Chase Home Financial, LLC, another subsidiary of JPMC.
Notwithstanding the concerns of “robo-signing” embraced in the consent order, the opposition affirmation of Attorney Badalato ignores the contentions concerning Ms. Womack *681 Hobbs. Instead, plaintiffs counsel mistakenly asserts that the instant motion is precluded under principles of res judicata. As stated above, the court considers the consent order new and significant information that should have been, but was not disclosed with the submissions on the earlier motion. Further, the court finds that the consent order necessitates a closer scrutiny of the standing issue raised by the defendant. The court will treat this motion as a motion to renew defendant’s motion to dismiss the case for lack of standing.
The procedural history of this case is outlined in the court’s January 4, 2012 decision and order. The court recognizes that defendant was previously found in default and that the initial action commenced by Option One Mortgage Corporation in 2000 was consolidated in 2005 with the second action commenced by EMC in 2004. Since that time, however, the laws and rules governing foreclosure actions have evolved (see CPLR 3408). Pursuant to the Uniform Rules for Trial Courts, plaintiffs counsel must submit an affirmation verifying the integrity of the action (22 NYCRR 202.12-a [f]; Administrative Order of Chief Admin Judge of Cts, No. AO/431/11 [Mar. 2, 2011]).[3] Defendant’s application here, bolstered by the consent order, directly calls the integrity of this action into question.[4]
“Standing requires an inquiry into whether a litigant has an interest ... in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant’s request” (Bank of N.Y. v Silverberg, 86 AD3d 274, 279 [2011] [internal quotation marks and citations omitted]). A plaintiff in a foreclosure action must be either the holder or assignee of the note and mortgage to have standing to commence the action (HSBC Bank USA v Hernandez, 92 AD3d 843 [2012]; LaSalle Bank Natl. Assn. v Ahearn, 59 AD3d 911 [2009]). An assignment of the mortgage without an assignment or physical delivery of the note is a nullity.
*682 Where, as here, the note is payable to order (i.e., the mortgagee, Option One Mortgage Corporation), it may be negotiated by delivery with any necessary indorsement (UCC 3-202 [1]). By an indorsement, the holder of a note may transfer its interest in the note to another (80 NY Jur 2d, Negotiable Instruments and Other Commercial Paper § 244). An indorsement must be written on the note “or on a paper so firmly affixed thereto as to become a part thereof” (UCC 3-202 [2]). Typically, the indorsement is written on the back of the note (80 NY Jur 2d, Negotiable Instruments and Other Commercial Paper § 250). When the indorsement is attached, the attached paper is called an “allonge” (id.). When, as here, the validity of an indorsement is called into issue, the plaintiff bears the burden of proving the genuineness of the indorsement (id. § 253). Actual delivery of an indorsed note is essential to complete the transfer (id. § 264).
In the court’s January 4, 2012 decision and order denying defendant’s motion to dismiss the complaint, the court determined plaintiff had demonstrated its standing to pursue this action. The defendant’s current application has called that ruling into question.
The underlying note, dated April 28, 2000, was payable to Option One Mortgage Corporation. For reasons unclear, the submissions include two separate note documents stamped “original” (see exhibits 7, 8 annexed to motion). In any event, to evidence the assignment, plaintiff focused on three items in its submissions on the prior motion. Specifically, in her September 20, 2011 affirmation, Attorney Olson asserted that “this transfer is evidenced by the endorsement stamped on the Note and Assignment of Mortgage that has been recorded” (see Olson affirmation, exhibit 10, H 5).
Upon closer scrutiny, a review of the note and assignment documents reveals certain deficiencies. Pursuant to UCC 3-804, the owner of a note which is lost may still maintain an action on the note “upon due proof of his ownership, the facts which prevent his production of the instrument and its terms.” To begin, plaintiff openly acknowledges that it does not possess the original note and produced only a copy of the outdated “Lost Note Affidavit” of Amy Womack-Hobbs (exhibit 11). Given the contention of “robo-signing,” it is particularly troubling that plaintiff failed to produce an original, current affidavit to address the status of the note on both the prior motion and this motion. Apart from the fact that defendant has raised an *683 unrefuted issue as to the viability of Ms. Womack-Hobbs’ signature, as discussed above, Ms. Womack-Hobbs simply reports “that to the best of her knowledge and belief the note, a true and correct copy of which is attached as exhibit £A’ hereto, was in the Corporation’s possession but said note was subsequently lost or destroyed” (id.). She provides no factual basis for her affirmed statement. While exhibit A includes both a copy of the note and the allonge, no explanation is provided as to why the indorsement was not placed on the actual note. There was certainly adequate room on the note to include an indorsement. The allonge includes a May 5, 2000 date stamp, but there is no discussion as to whether the allonge was actually affixed to the note, and, if so, when. Nor is there any specific information provided as to actual delivery of the note to EMC. Remarkably, the allonge does not clearly identify EMC Mortgage Corporation. The letters preceding the word “Mortgage” are partially blanked out. In the court’s view, this affidavit fails to satisfy the requirements of UCC 3-804.
Plaintiff also relies upon two different assignment documents, with no real explanation as to why there are two assignments. The first assignment is dated May 5, 2000, one week after the note was signed (exhibit 2). In her supporting affirmation Attorney Olson explains that it was customary for the lender to prepare a blank assignment and then add the assignee’s name upon a sale of the note and mortgage (see exhibit 2; Olson affirmation 1Í10). Ms. Olson opined that ££[w]hen Option One sold the loan to EMC, it appears that a stamp with EMC’s name was placed on the document in the place for the name of the assignee” (id. [emphasis added]). The document does indeed include the name of “EMC Mortgage Corporation” as assignee, but Ms. Olson’s statement is speculative — and there is no confirmation as to when the EMC name was actually added to the document. Notably, the original document was never recorded and there is no explanation whether plaintiff is actually in possession of the original assignment document.
The second assignment is dated June 2, 2004, but by its terms “effective this 30th day of March, 2001” (exhibit 4). “[A] written assignment claiming an earlier effective date is deficient unless it is accompanied by proof that the physical delivery of the note and mortgage was, in fact, previously effectuated” (LaSalle Bank Natl. Assn. v Ahearn, 59 AD3d at 912; see Bankers Trust Co. v Hoovis, 263 AD2d 937, 938 [1999]). As noted above, plaintiff has not provided any evidentiary proof of actual delivery of the note.
*684 In response to the prior motion, as well as the pending motion, plaintiff had the burden of demonstrating that it has standing to pursue this action (Bank of N.Y. v Silverberg, 86 AD3d at 279; U.S. Bank, N.A. v Collymore, 68 AD3d 752, 753 [2009]). As discussed above, plaintiff has failed to establish whether and when the note was actually indorsed, completely failed to explain the allonge to the note, failed to produce an original “Lost Note Affidavit” that satisfies the standard set forth in UCC 3-804 or even respond to defendant’s contention that the affidavit was signed by a nonemployee, and completely failed to address the core requirement of actual delivery of an indorsed note from the original mortgagee, Option One Mortgage Corporation, to EMC Mortgage Corporation. There has been no explanation as to the whereabouts of the original, unrecorded first assignment or when the name of EMC Mortgage Corporation was added to the document other than Ms. Olson’s speculative statement. And without proof of actual delivery, the attempt to backdate the effective date of the assignment in the second assignment was invalid. In the consent order, EMC essentially conceded that mortgages such as defendant’s are entitled to an independent review analyzing the integrity of the pleadings and underlying documents. That consultant review is presently underway. In the meantime, given the above, the court finds that plaintiff has failed to meet its burden of proof to demonstrate that it has standing to pursue this action. It follows that EMC lacked authority for the purported assignment of the note and mortgage to Kondaur Capital Corporation.
Accordingly, defendant’s motion to dismiss the complaint is granted, with costs.

. In the third whereas clause of the consent order, it is noted that JPMC transferred all of the “EMC Servicing Rights” to JP Morgan Chase Bank (the bank) on or about April 1, 2011. The clause provides that following the transfer, only the bank is authorized to conduct residential loan servicing for JPMC — raising a serious question as to whether EMC remains authorized to *680 pursue this action. In his opposition affirmation, Attorney Badalato fails to address the transfer of EMC’s loan servicing rights and obligations to the bank.

. Actually, plaintiff only produced a copy of the “Lost Note Affidavit,” explaining that the original affidavit was possessed by Kondaur Capital Corporation (see affirmation of Karen Olson, Esq., Sept. 20, 2011, exhibit B, V 18) — an entity to which plaintiff ostensibly assigned the underlying mortgage by assignment dated March 30, 2010, and recorded on May 3, 2010 in the Rensselaer County Clerk’s Office. Interestingly enough, that assignment also bears the signature of Amy Womack-Hobbs. Plaintiff fails to explain the viability of the assignment to Kondaur considering the fact that this mortgage has allegedly been in default since 2000 and the consent order was issued in April 2011.

. The court points out that, to date, plaintiffs counsel has not submitted the required attorney affirmation.

. This is particularly so given that this court has repeatedly rejected plaintiffs applications in 2003, 2006 and 2009 to confirm a referee’s report of the amount due on the mortgage. Indeed, by decision and order (Lynch, J.) dated October 30, 2009, the court rejected the referee’s “Report of Amount Due” for again failing to account for payments made and appointed a new referee to compute the amount due. The court awaits the report of the referee. Given the case history, however, it appears that plaintiff is unable to actually document the amount due on this loan.